UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FADI EL BITAR,

Plaintiff,

v.

PAM BONDI, KIKA SCOTT, TODD LYONS, and RON ROSENBERG,

Defendants.

CASE NO. 3:25-cv-05431-JNW

TEMPORARY RESTRAINING ORDER

## 1. INTRODUCTION

Plaintiff Fadi El Bitar is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center and is scheduled for removal tomorrow on May 20, 2025. He has filed a complaint seeking a writ of mandamus and relief under the Administrative Procedures Act (APA), and a motion for a temporary restraining order seeking an immediate stay of removal. Dkt. Nos. 1, 3. El Bitar has not provided notice to the Government.

The Court recognizes that ex parte TROs are an extraordinary measure, but El Bitar has raised serious questions about whether the Government has carried out its statutory duty to provide him—as an asylum seeker—a credible fear

interview. And he has shown that deportation to a country where he will face physical danger presents irreparable harm. After carefully examining the record and the applicable law, the Court finds that this case presents one of those rare circumstances where immediate intervention is necessary to preserve the status quo until both parties can present their arguments. This approach balances the extraordinary nature of ex parte relief against the concrete risk of irreversible harm.

## 2. BACKGROUND

El Bitar is a citizen of Lebanon. Dkt. No. 1 ¶ 1. On January 21, 2025, El Bitar surrendered himself to the U.S. Customs and Border Protection (CBP) at the U.S. border. *Id.* ¶ 2–3. CBP detained El Bitar and transferred him to ICE custody. *Id.* ¶ 3. El Bitar expressed a fear of persecution in Lebanon and requested a credible fear interview. *Id.* ¶ 6. El Bitar's counsel reached out multiple times to both CBP and ICE to secure a credible fear interview. *Id.* ¶¶ 6, 9, 13, 27.

On April 16, 2025, ICE took El Bitar from his cell to an interview room where he was asked questions about his fear of returning to Lebanon. *Id.* ¶ 29. ICE denied El Bitar access to his counsel even though he requested it. *Id.* ¶ 30. On April 18, 2025, ICE informed El Bitar that the interview results were negative and that ICE would be deporting him in 30 days. *Id.* ¶ 32. On April 21, 2025, El Bitar's counsel emailed Seattle ICE, the Office of the Principal Legal Advisor, and the Asylum Pre-Screening Officer (APSO), requesting an immigration judge review the negative credible fear finding. *Id.* ¶¶ 35–37. The APSO replied stating that El Bitar was not

referred to U.S. Citizenship & Immigration Services (USCIS) for a credible fear interview and that there are no documents to serve upon counsel's office or review by the immigration judge. *Id.* ¶ 38. Again, on May 6, 2025, El Bitar's counsel emailed ICE Seattle explaining the situation and ICE Seattle again referred counsel to USCIS. *Id.* ¶ 42. Despite the April 16, 2025, questioning, ICE and USCIS deny ever interviewing El Bitar to assess the credibility of his fear of returning to Lebanon. *Id.* ¶ 62.

El Bitar alleges that the Government has denied him his statutory right to have his fear of returning to his country considered by a USCIS asylum officer during a credible fear interview under 8 C.F.R. § 208.30(d) and 8 U.S.C. § 1225(b)(1)(A)(ii). *Id.* ¶ 56. El Bitar also alleges that USCIS has denied him a written notice of its credible fear decision and review by an immigration judge, citing 8 C.F.R. § 208.30(d), (e)(1), (f), (g)(1) and 8 U.S.C. § 1225(b)(1)(B)(iii)(III). *Id.* ¶ 57. Finally, El Bitar alleges that ICE is violating its statutory duty under 8 C.F.R. § 208.30(b) and 8 U.S.C. § 1225(b)(1)(A)(ii) to defer removal until the credible fear process is complete. *Id.* ¶ 66. El Bitar asks that the Court stay his removal scheduled for tomorrow until the Government provides him a proper credible fear interview per the statutory procedures. Dkt. No. 3 at 5.

## 3. DISCUSSION

### 3.1 Legal standard.

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434

U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

After considering the record and the applicable legal standard, the Court concludes that an emergency TRO is warranted for the reasons stated below.

**3.2 El Bitar raises serious questions going to the merits.**

El Bitar raises serious questions going to the merits of his APA claim, particularly regarding the Government's apparent failure to follow mandatory statutory procedures for asylum seekers.[1]

First, 8 U.S.C. § 1225(b)(1)(A)(ii) provides that if an alien indicates an intention to apply for asylum or a fear of persecution, "the officer *shall* refer the alien for an interview by an asylum officer." (emphasis added). The use of "shall" creates a mandatory duty. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (noting that "shall" means "mandatory" and "normally creates an obligation impervious to judicial discretion").

Second, 8 C.F.R. § 208.30(d) specifically requires that asylum officers conduct credible fear interviews in a non-adversarial manner, with the goal of "elicit[ing] all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture." *See also Innovation L. Lab v. Wolf,* 951 F.3d 1073, 1089 (9th Cir. 2020)*, vacated and remanded sub nom. Mayorkas v. Innovation L. Lab,* 141 S. Ct. 2842, 210 L. Ed. 2d 955 (2021), *and vacated as moot sub nom. Innovation L. Lab v. Mayorkas,* 5 F.4th 1099 (9th Cir. 2021). The regulation further mandates specific procedural protections, including requiring the asylum officer to

[1] The Court addresses only the merits of El Bitar's APA claim in this Order. *See Versaterm Inc. v. City of Seattle*, C16-1217-JLR, 2016 WL 4793239, at *5 (W.D. Wash. Sept. 13, 2016) ("Where a party asserts multiple claims, the court need not find that the plaintiff is likely to succeed on the merits of all of the plaintiff's claims to issue a preliminary injunction.").

"verify that the alien has received information about the credible fear process." 8 C.F.R. § 208.30(d)(2).

Third, 8 C.F.R. § 208.30(g)(1) provides that if an asylum officer determines that an alien does not have a credible fear of persecution, the officer "shall provide the alien with a written notice of decision" and inquire whether the alien wishes to have an immigration judge review the negative determination.

The record raises substantial questions about whether these mandatory procedures were followed. The APSO has explicitly stated that El Bitar "was not referred to USCIS for a credible fear interview," Dkt. No. 1 ¶ 38, yet ICE appears to have conducted some form of interview and made a negative determination without providing written documentation or offering El Bitar the opportunity for review by an immigration judge, as required by the regulations.

Section 706(1) of the APA requires the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." *CRVQ v. USCIS*, No.: CV 19-8566, 2020 WL 8994098 (C.D. Cal. Sept. 24, 2020) (quoting 5 U.S.C. § 706(1)) (citing 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties . . . and within a reasonable time, each agency shall proceed to conclude a matter presented to it.")). To decide whether an agency's delay is unreasonable, district courts in the Ninth Circuit use the six-factor "*TRAC* test." The factors are:

1. the time agencies take to make decisions must be governed by a rule of reason;

2. where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
3. delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
4. the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
5. the court should also take into account the nature and extent of the interests prejudiced by delay; and
6. the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Pesticide Action Network N. Am., Nat. Res. Def. Council, Inc.*, 798 F.3d 809, 813 (9th Cir. 2015) (citing *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")).

Considering these factors here, El Bitar raises serious questions about the reasonableness of the Government's withholding of a proper credible fear interview. The third and fifth factors are particularly informative, as El Bitar faces extreme prejudice through deportation, and his health and welfare are at stake.

Given the balance of hardships tips sharply in El Bitar's favor, as explained below, this showing is sufficient under the Ninth Circuit's sliding scale approach to warrant temporary relief while the Court more fully considers the merits.

**3.3 The remaining *Winter* factors support a TRO.**

The second *Winter* factor—irreparable harm—tips sharply in favor of a TRO. El Bitar has expressed fear of returning to his home country of Lebanon because of his political opinion against the designated terrorist group, Hezbollah. El Bitar has refused to support or join Hezbollah and, in response, received death threats forcing him to flee the country. Also, El Bitar's wife and children are present in the United States and separation from them would cause irreparable harm. These potential harms are severe, concrete, and cannot be remedied through monetary compensation. *See Leiva-Perez v. Holder,* 640 F.3d 962, 969 (9th Cir. 2011) ("[A] noncitizen must show that there is a reason specific to his or her case, as opposed to a reason that would apply equally well to all aliens and all cases, that removal would inflict irreparable harm[.]").

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors also tip sharply in El Bitar's favor. While the public has an interest in the enforcement of immigration laws, that interest is not served by enforcement that skirts statutory and regulatory requirements. As the Ninth Circuit has noted, "the public also has an interest in ensuring that 'statutes enacted by their representatives' are not imperiled by executive fiat." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Maryland v. King*, 567 U.S. 1301, 1301 (2012)).

Thus, a TRO precluding El Bitar's deportation would change little to nothing for the agencies involved. Meanwhile, absent a TRO, El Bitar will face life-changing and irreparable harm.

**3.4 An ex parte TRO is appropriate and necessary.**

Courts will rarely grant TROs ex parte. Fed. R. Civ. P. 65(b); LCR 65(b). But "if the movant meets the requirements of Fed. R. Civ. P. 65(b), the court may grant the motion without awaiting a response." LCR 65(b).

Although El Bitar has not submitted a sworn declaration under penalty of perjury specifically addressing his fear of death, the verified complaint contains detailed allegations that satisfy Rule 65(b)'s requirements. The Court also notes that El Bitar's counsel has documented extensive attempts to engage with the proper government agencies regarding El Bitar's credible fear interview, effectively putting those agencies on notice of El Bitar's claims. *See* Dkt. No. 1 ¶¶ 6–7, 9, 12–15, 17–18, 23, 27, 35, 37, 39, 40, 42 (documenting communications with ICE, USCIS, and asylum offices).

Given the imminent threat of deportation—El Bitar's removal is scheduled for tomorrow—combined with the serious questions raised and risk of irreparable harm, the Court finds ex parte relief warranted. The Court emphasizes that this order is merely temporary, preserving the status quo until both parties can be heard at a preliminary injunction hearing, which will be scheduled promptly.

## 4. CONCLUSION

Accordingly, the Court ORDERS that Defendants and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them are immediately enjoined from:

(a) Removing or deporting El Bitar from the United States; and

(b) Transferring El Bitar from the Northwest ICE Processing Center to any other facility during the pendency of these proceedings.

Unless extended by the Court, this Temporary Restraining Order expires 14 days from entry. No security bond is required under Federal Rule of Civil Procedure 65(c) because Defendants face no realistic likelihood of harm from enjoining their conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

El Bitar must immediately serve Defendants with a copy of his complaint, his motion for a temporary restraining order, and this Order. El Bitar must file proof of such service with the Court within 24 hours of this Order.

To the extent El Bitar intends to move for a preliminary injunction, the parties are ordered to meet and confer and file a joint status report by May 27, 2025, (1) proposing a preliminary injunction briefing schedule, (2) indicating whether they believe a hearing is necessary, and if so, (3) indicating whether they plan to present evidence at the hearing.

Dated this 19th day of May, 2025.

Jamal N. Whitehead
United States District Judge